UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS LEWIS,

                 Plaintiff,               Case No. 5:18-cv-10176
                                        District Judge Judith E. Levy
v.                                 Magistrate Judge Anthony P. Patti

E. PICKELL, *et al*.,

                 Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(a) (ECF No. 24)

**I.**     **RECOMMENDATION**:  The Court should **GRANT** Defendants' motion

for summary judgment.  (ECF No. 24.)

**II.**     **REPORT**

       **A.**     **Background**

             **1.**     **Factual Background**

       At approximately noon on March 5, 2015, Defendant Officer Edward Pickell

was dispatched to a residence in Redford on a report of domestic violence.  (ECF

No. 24-1.)[1]  According to Officer Pickell, he was met upon arrival by Plaintiff's

wife, who explained that during an argument in their bedroom the night before,

---

[1] The documents cited throughout the factual background are those attached to
Defendants' motion for summary judgment.  (ECF No. 24.)

Plaintiff pushed her into a dresser, slammed the bedroom door shut to prevent her from leaving or calling 911, and threatened to hurt her "real bad" if she thought about calling the police.  (ECF No. 24-1, PageID.140; ECF No. 24-2, PageID.143.) She also complained of pain in her right thumb, and Officer Pickell observed a small cut near the base of her thumbnail.  (ECF No. 24-1, PageID.140; ECF No. 24-2, PageID.143.)  Along with her verbal statement, Plaintiff's wife provided a written statement in which she described that during an argument with Plaintiff on March 4, 2015, Plaintiff pushed her into a dresser, would not let her leave the room to call the police, and threatened to hurt her real bad before police could arrive. (ECF No. 24-1, PageID.141.)

Later that same day, March 5, 2015, Officer Pickell was again dispatched to the Redford residence in response to a call from Plaintiff that his son was waiting inside the home with a gun.  (ECF No. 24-3, PageID.149.)  He was met at the scene by Sergeant Turner and Officer Kremenski.  (ECF No. 24-3, PageID.149.) According to Officer Pickell's report, when he asked Plaintiff what had happened the night before, Plaintiff responded that he and his wife had argued.  (ECF No. 24-3, PageID.149.)  The report further reads:

> M. Lewis Sr. was arrested for Domestic Violence and Threats.  He was searched, handcuffed (tension checked & double locked), and placed in the rear of RTA3 patrol vehicle.  RTA3 transported M. Lewis to RTPD Jail and turned him over to the RTPD Jailer without incident.

> I went inside, along with RTA60, and spoke with K. Lewis and their children, including M. Lewis Jr.  There was no gun in the apartment.  I informed K. Lewis that M. Lewis Sr. was in custody for the earlier events.

(ECF No. 24-3, PageID.149.)

Plaintiff was charged with unlawful imprisonment, MCL 750.349b, interfering with a crime report, MCL 750.483a, and domestic violence, MCL 750.81(2) (ECF No. 24-5), arraigned on March 6, 2015 (ECF No. 24-3, PageID.150; ECF No. 24-7, PageID.171; ECF No. 25, PageID.232) and again on March 31, 2015 (ECF No. 24-7, PageID.171; ECF No. 25, PageID.233), and bound over on all three charges[2] following a preliminary examination on March 24, 2015.  (ECF No. 24-7, PageID.171; ECF No. 25, PageID.233).  Ultimately, however, the case against Plaintiff was dismissed at trial when Plaintiff's wife failed to appear.  (ECF No. 24-3, PageID.154; ECF No. 24-7, PageID.172.) Proceeding *in pro per*, Plaintiff subsequently filed the instant lawsuit under 42 U.S.C. § 1983, alleging, against all Defendants: (1) wrongful arrest in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution; (2) malicious prosecution and unreasonable prosecutorial seizure in violation of the Fourth and

---

[2] Although the Register of Actions simply says "Bound Over" (ECF No. 24-7, PageID.171; ECF No. 25, PageID.233), the disposition of the case on the Register of Actions indicates that all three charges were dismissed (ECF No. 24-7, PageID.171; ECF No. 25, PageID.234), as does the order of dismissal (ECF No. 25, PageID.239).  Thus, the Court assumes Plaintiff was bound over on all three charges.

3

Fourteenth Amendments; and (3) a due process violation related to his custodial interrogation.  (ECF No. 19, PageID.78-82; ¶¶ 25-51.)[3]

### 2.   Instant Motion

On April 1, 2019, Defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(a), asserting that: (1) Defendant officers are entitled to summary judgment of Plaintiff's claims on the basis of qualified immunity; (2) Defendant Redford Township Police Department is entitled to summary judgment because it is an entity not subject to suit; and (3) Defendant City of Redford has no municipal liability for Plaintiff's claims.  (ECF No. 24.)  Plaintiff filed his response on April 18, 2019, asserting that summary judgment is inappropriate because factual disputes exist.  Specifically, he argues that Defendants lacked probable cause to arrest and prosecute him, and that Defendants furnished false information in support of the decision to arrest, detain and prosecute.  (ECF No. 25, PageID.176-177, 198-207.)  The response is not notarized or accompanied by an affidavit, and does not contain a certification that the statements made therein are true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746.

---

[3] Plaintiff originally filed this case on January 16, 2018 (ECF No. 1), but filed an amendment complaint that was accepted by the Court on April 30, 3018 (ECF No. 19).

On April 24, 2019, Defendants replied that Plaintiff relied on conclusory allegations in response to the motion for summary judgment, submitted no sworn statement in support or evidence demonstrating that Defendants made false statements, and presented "neither facts nor law to rebut the immunity and municipal liability arguments asserted by Defendants in their motion for summary judgment and supporting brief."  (ECF No. 26, PageID.353-357.)  Plaintiff then filed an unauthorized sur-reply on May 8, 2019, which is notarized and contains the statement: "The statements made herein, are true; and subject to the penalty of law of perjury."  (ECF No. 27.)[4]

## B.    Standards

### 1.    Rule 56 Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts

---

[4] The Court declines to consider this unauthorized sur-reply, see Local Rule 7.1(c)(3), but even if it did, arguments made for the first time in a reply (or sur-reply) brief are generally considered waived.  *Frank v. U.S. Food & Drug Admin.*, 998 F.Supp.2d 596, 602 (E.D. Mich. 2014) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).

in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to

establish an essential element of its case . . . ." *Stansberry*, 651 F.3d at 486 (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule

56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient

treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338,

344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary

judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema,*

*N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"

*Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788

(6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315

(11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary

judgment, a party cannot rely on allegations or denials in unsworn filings and that a

party's "status as a pro se litigant does not alter [this] duty on a summary judgment

motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a *pro se* plaintiff because he "failed to present

any evidence to defeat the government's motion").

## C.   Discussion

### 1.    42 U.S.C. § 1983

Plaintiff brings each of his claims under 42 U.S.C. § 1983. (ECF No. 19, PageID.75, 78-82.) "'Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law.'" *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014) (quoting *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)). It does not, however, "permit individuals to sue state actors in the abstract; it requires them to connect alleged constitutional violations of the individuals' right to state conduct." *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 614 (6th Cir. 2018).

### 2. The individual Defendants are entitled to summary judgment of all of Plaintiff's claims

In their summary judgment motion, the individual Defendants assert entitlement to summary judgment on the basis of qualified immunity. (ECF No. 24, PageID.106.) Section 1983 claims are subject to the affirmative defense of qualified immunity. *Regets*, 568 F. App'x at 386. "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Barton v. Martin*, No. 18-1614, 2020 WL 595981, at *4 (6th Cir. Feb. 7, 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "After a defending officer initially raises qualified immunity, the plaintiff bears the burden of showing that

8

the officer is not entitled to qualified immunity." *Barton*, 2020 WL 595981 at *4

(citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)). "In the qualified

immunity context, if the facts alleged and evidence produced, viewed in the light

most favorable to the plaintiff, would permit a reasonable juror to find that the

officer violated a clearly established constitutional right, dismissal by summary

judgment is inappropriate." *Barton*, 2020 WL 595981 at *3.

Qualified immunity involves two steps. "First, viewing the facts in the light

most favorable to the plaintiff, the court must determine whether the officer

committed a constitutional violation." *Id*. at *4. "Second, if there is a

constitutional violation, the court must determine whether that constitutional right

was clearly established at the time of the incident." *Id*. "A right is clearly

established when the 'contours of the right [are] sufficiently clear that a reasonable

official would understand that what he is doing violates that right.'" *Id*. (quoting

*Morrison v. Bd. of Trs. Of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

### a.    Wrongful Arrest/False Imprisonment

In Count I of his amended complaint, Plaintiff alleges that "[a]cting under

color of law, Defendants violated Plaintiff's right to be free from unreasonable

seizure of his person, as guaranteed by the Fourth and Fourteenth Amendments of

the United States Constitution, by unlawfully arresting Plaintiff and prosecuting

him without probable cause to establish he had committed a crime." (ECF No. 19,

PageID.78, ¶ 26.)  With respect to the individual Defendants specifically, he

asserts that Officers Pickell, Turner and Kremenski responded to the second call to

police and placed Plaintiff under arrest (ECF No. 19, PageID.75, ¶¶ 5, 7, 10), and

that Officer Pickell created conflicting dates and times and failed to gather all

relevant evidence in support of his arrest (ECF No. 19, PageID.76, ¶ 20).

In their summary judgment motion, the individual Defendants assert

entitlement to summary judgment of this claim on the basis of qualified immunity.

(ECF No. 24, PageID.106, 122-128.)  In so doing, they argue that Officers Holt

and James M. Meade did not participate in Plaintiff's arrest and, therefore, cannot

be held liable for any alleged constitutional violation resulting from the arrest, and

that "[g]iven the definition of domestic violence under Michigan law and the facts

that Defendant Officers knew at the time of Plaintiff's arrest, there was probable

cause to arrest Plaintiff for domestic violence."  (ECF No. 24, PageID.126-128.)

For the reasons that follow, I agree.

"It is well settled that the Fourth and Fourteenth Amendments require

probable cause to justify arresting an individual." *Barton*, 2020 WL 595981 at *7.

Accordingly, "[t]o prevail on a false arrest or imprisonment claim under § 1983

and Michigan law, a plaintiff must prove that his arrest was not supported by

probable cause." *Horacek v. Neph*, 466 F. App'x 508, 510 (6th Cir. 2012).  A

court must look at state law to define the offense for which an officer may arrest a

person, and federal law to determine whether probable cause existed for an arrest. *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011).

"'In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.'" *Barton*, 2020 WL 595981 at *6 (quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). But an officer will be entitled to qualified immunity "'if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of . . . the information possessed at the time by the arresting agent.'" *Barton*, 2020 WL 595981 at *6 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)). "Thus, 'even if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful.'" *Barton*, 2020 WL 595981 at *6 (quoting *Kennedy*, 635 F.3d at 214).

Here, no such factual dispute regarding probable cause exists, and the individual Defendants are entitled to qualified immunity from Plaintiff's wrongful arrest claim. "An officer has probable cause 'when, at the moment the officer seeks arrest, the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an

11

offense.'" *Barton*, 2020 WL 595981 at \*7 (quoting *Wesley v. Campbell*, 779 F.3d

421, 429 (6th Cir. 2015) (quotation marks omitted)).  To make a proper probable

cause determination, a court must consider both the inculpatory and exculpatory

evidence known to the arresting officer at the time of the arrest.  *Barton*, 2020 WL

595981 at \*7.

Although Plaintiff broadly alleges that "[e]ach of the individual defendants

made, influenced, aided and/or participated in the decision to arrest, detain, and

criminally prosecute" (ECF No. 19, PageID.78, ¶ 29), Plaintiff points to no

evidence in the record that Defendant Officers Holt or Meade directly participated

in his arrest, or in the decision to arrest.  Thus, Officers Holt and Meade, no matter

the probable cause analysis, cannot be held liable for any alleged constitutional

violation related to the arrest.  *See Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir.

2014) ("The proper defendants in an action under § 1983 or *Bivens* are the law

enforcement officers who were personally involved in the incident alleged to have

resulted in a violation of the plaintiff's civil rights.").

In any case, based on the Michigan domestic violence statute, MCL 750.81,

the offense for which Plaintiff was arrested (ECF No. 24-2, PageID.143; ECF No.

24-3, PageID.149), probable cause existed to arrest Plaintiff.  MCL 750.81(2)

states, in pertinent part: "[A]n individual who assaults or assaults and batters his or

her spouse or former spouse, an individual with whom he or she has had a dating

12

relationship, and individual with home he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor . . . ."  Thus, the elements of domestic violence are: "(1) the commission of an assault or an assault and battery" and (2) a listed relationship between the individuals involved.  *People v Cameron*, 291 Mich. App. 599, 614; 806 N.W.2d 371 (2011).  Further, a battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person," and an assault is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery."  *Id.* (quotation marks and citations omitted).

The incident reports as well as Officer Pickell's affidavit, submitted by Defendants in support of their motion for summary judgment, indicate that Plaintiff's wife told Officer Pickell, upon his arrival to the initial domestic violence call on March 5, 2015, that Plaintiff had pushed her into a dresser the night before, resulting in pain to her thumb and back, and had threatened to hurt her if she called the police.  (ECF No. 24-1, PageID.140; ECF No. 24-2, PageID.143.)  According to Officer Pickell, he also observed a small cut on her thumb.  (ECF No. 24-1, PageID.140; ECF No. 24-2, PageID.143.)  Further, Plaintiff's wife provided a written statement, also attached to Defendants' summary judgment motion, detailing the push into the dresser as well as Plaintiff's threats of harm.  (ECF No.

24-1, PageID.141.)  Even viewing this evidence in the light most favorable to

Plaintiff, is it clear that probable cause existed to arrest Plaintiff for domestic

violence during the second call to the residence on March 5, 2015.  *See Klein v.*

*Long*, 275 F.3d 544, 551 (6th Cir. 2001) ("The physical evidence of battery in the

bleeding finger, combined with Mrs. Klein's description to the officers of Mr.

Klein's grabbing and pushing and her immediate fear of Mr. Klein constitutes a

sufficient factual basis for the finding of probable cause.")[5]; *see also Thacker v.*

*City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003) (citing *Klein*, 275 F.3d at 551-

52) ("Gallagher's confession that Thacker had abused her alone is sufficient to

establish probable cause.").

Plaintiff asserts in his response to Defendants' summary judgment motion,

without record citations, that his wife's statement and Officer Kremenski's

interrogatory answers contradict Officer Pickell's version of events (ECF No. 25,

PageID.184-185), and that "[t]he defendant asserted in his police reports that direct

physical evidence had been observed by him, and possible by the assisting officer

assisting him in conducting the on-scene investigation yet neither of these officer's

defendants followed departmental policy directive and procedures operations

according to gathering collecting and photographing critical evidence relevant to

---

[5] *Klein* involved the same Michigan domestic violence statute at issue here.  *Klein*,
275 F.3d at 550-51.

14

this case, one would have to assume either it was withheld, or that the allege evidence never exited as it had been report to have" (ECF No. 25, PageID.202). However, these unsworn assertions amount to conclusory statements insufficient to rebut the probable cause evidence Defendants produced in their summary judgment motion. *Viergutz*, 375 F. App'x at 485.  And a review of the interrogatory answers (ECF No. 25, PageID.261-330) attached to Plaintiff's response, as well as the written statement provided by Plaintiff's wife, demonstrates no material inconsistencies with Officer Pickell's version of events. The fact that Plaintiff's wife did not describe the injury to her thumb in her written statement does not negate the veracity of Officer Pickell's statement that he observed such an injury.  (ECF No. 24-1, PageID.140-141; ECF No. 24-2, PageID.143.)  Nor do Officer Kremenski's statements that he does not recall observing the injury.  (ECF No. 25-1, PageId.291-292.)  Moreover, Plaintiff readily admits that his wife provided a written statement to police (ECF No. 25, PageID.178) which, as provided above, may be sufficient to establish probable cause, *see Klein*, 275 F.3d at 551-52; *Thacker*, 328 F.3d at 256, and fails to identify any exculpatory evidence the arresting officers would have discovered upon further investigation that would have altered a finding of probable cause to arrest. *See Klein*, 275 F.3d at 552 ("[L]aw enforcement is under no obligation to give any credence to a suspect's story . . . nor should a plausible explanation in any sense

require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.") (quotation marks and citation omitted).  Moreover, even if "critical evidence relevant to this case" was not gathered, collected and photographed to Plaintiff's liking (ECF No. 25, PageID.202), the reasonably trustworthy information within the arresting officer's knowledge at the moment of arrest was "sufficient to warrant a prudent man in believing that [Plaintiff] had committed . . . an offense." *Barton*, 2020 WL 595981 at *7.  This is true even if the offense was not committed in the officer's presence, and even if the offense was committed just before the officer's prior visit to the premises.  Finally, probable cause was confirmed at the preliminary examination, resulting in Plaintiff being bound over for trial.  (ECF No. 24-7, PageID.171; ECF No. 25, PageID.233-234.)

Accordingly, no genuine issue of material fact exists with regard to probable cause, and the individual Defendants are entitled to qualified immunity from Plaintiff's wrongful arrest claim.  The evidence demonstrates that the officers present for the arrest reasonably could have believed that Plaintiff's arrest was lawful.  The Court should, therefore, grant summary judgment to each of the individual Defendants on Count I.

**b.   Malicious Prosecution**

In Count II of Plaintiff's amended complaint, he alleges malicious

prosecution, stating: "Acting under color of law, Defendants violated Plaintiff's

right under the Fourth and Fourteenth Amendments to the United States

Constitution to be free from malicious prosecution/unreasonable prosecutorial

seizure, by wrongfully investigating, prosecuting, and detaining Plaintiff without

probable cause."  (ECF No. 19, PageID.79, ¶ 35.)  With regard to the individual

Defendants specifically, Plaintiff alleges that each made, influenced, aided or

participated in the decision to prosecute, and furnished false information in support

of that decision, including information stating that marks and injuries were

observed on Plaintiff's wife.  (ECF No. 19, PageID.80, ¶¶ 38-39.)  Further, in his

general allegations, he states that Officers Meade, Pickell and Holt "failed to

conduct a thorough investigation and follow-up investigation, in violation of the

requirements of the U.S. Constitution and Michigan law."  (ECF No. 19,

PageID.76, ¶ 19.)  These requirements are unspecified.

The Fourteenth Amendment may not give rise to a federal constitutional

malicious prosecution claim.  *Thacker*, 328 F.3d at 258.  However, "[t]he Sixth

Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious

prosecution under the Fourth Amendment,' which 'encompasses wrongful

investigation, prosecution, conviction, and incarceration.'"  *Sykes v. Anderson*, 625

17

F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16

(6th Cir. 2006)).  Thus, malicious prosecution can be distinguished from false

arrest because it "'remedies detention accompanied not by absence of legal

process, but by *wrongful institution* of legal process.'"  *Sykes*, 625 F.3d at 308

(quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)).

"To succeed on a Fourth Amendment malicious prosecution claim under §

1983 or *Bivens*, a plaintiff must prove the following: (1) a criminal prosecution

was initiated against the plaintiff and the defendant made, influenced, or

participated in the decision to prosecute; (2) there was no probable cause for the

criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff

suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal

proceeding was resolved in the plaintiff's favor."  *Robertson*, 753 F.3d at 616.  To

distinguish this claim from one of false arrest, a court "must consider not only

whether the Defendants had probable cause to arrest . . . but also whether probable

cause existed to initiate the criminal proceeding against the Plaintiff[]."  *Sykes*, 625

F.3d at 310-11.

In their summary judgment motion, Defendants argue that they are entitled

to qualified immunity from Plaintiff's malicious prosecution claim because

Plaintiff cannot establish the first two elements.  (ECF No. 24, PageID.128-130.)

Specifically, they assert that: (1) Plaintiff fails to allege or establish that Officers

Holt, Turner or Kremenski aided or participated in the decision to prosecute; (2)

Plaintiff produced no evidence that Officer Pickell did not actually observe an

injury to his wife's thumb or furnished any other false information to the

prosecutor; and (3) probable cause existed for Plaintiff's arrest and prosecution.

(ECF No. 24, PageID.129-130.)  I agree.

The evidence clearly demonstrates that probable cause existed for Plaintiff's

prosecution, and Plaintiff has failed to meet his burden of establishing a genuine

issue of material fact to the contrary.[6]  Following a preliminary examination, which

constitutes a judicial determination of probable cause, *see People v. McGee*, 258

Mich. App. 683, 696; 672 N.W.2d 191 (2003), defendant was bound over for trial

(ECF No. 24-7, PageID.171; ECF No. 25, PageID.233-234).  And Plaintiff's

unsworn assertions, with no support from the evidence attached to his summary

judgment response, that Defendants furnished false information in support of the

decision to prosecute, are conclusory and insufficient to overcome such a probable

cause determination.  *See Sykes*, 625 F.3d at 312 ("[I]n order to establish that a

testifying officer was responsible for commencing a criminal proceeding for

purposes of a malicious-prosecution claim, the Plaintiffs were required to present

evidence that Nichols (1) stated a deliberate falsehood or showed reckless

---

[6] Because the Court should find the existence of probable cause, it need not address
Defendants' argument that Plaintiff also failed to establish the first element of his
malicious prosecution claim.

disregard for the truth [at the hearing] and (2) that the allegedly false or omitted

information was material to the [court's] finding of probable cause.") (quotation

marks and citation omitted).  The exhibits attached to Plaintiff's response brief fail

to demonstrate that Officer Pickell lied about observing an injury to Plaintiff's

wife, as alleged in Plaintiff's amended complaint (ECF No. 19, PageID.80, ¶ 38),

and though Plaintiff asserts, without record citations, that the Defendant officers'

interrogatory answers and reports are all contradictory (ECF No. 25, PageID.182-

185, 188, 196), a review of the answer and reports reveals no material

contradictions.  Further, Plaintiff argues that Officers Pickell and Holt failed to

conduct a thorough investigation (ECF No. 25, PageID.188), attaching to his

summary judgment response interrogatory answers from both and the Redford

Police "Domestic Intervention Policy," but fails to explain or demonstrate how any

further investigation would have established a lack of probable cause for

prosecution.  And the criminal case against Plaintiff was not dismissed on the

merits, but because his wife failed to appear, a circumstance which is all too

common in domestic violence cases.  (ECF No. 24-3, PageID.154; ECF No. 24-7,

PageID.172.)

Accordingly, Plaintiff has failed to meet his burden of demonstrating that the

individual Defendants committed a violation of clearly established constitutional

law, *Barton*, 2020 WL 595981 at *3, and the Court should conclude that they are entitled to summary judgment on Plaintiff's malicious prosecution claim.

### c.    Due Process Custodial Interrogation

The Court should also conclude that the individual Defendants are entitled to summary judgment on Plaintiff's due process claim.  In Count III of his amended complaint, Plaintiff alleges that "[a]cting under color of law, Defendants violated Plaintiff's right under the Fifth and Fourteenth Amendments to the United States Constitution to be free from wrongful custodial interrogation by wrongfully interrogating Plaintiff without counsel, and without advising Plaintiff of his right to counsel and his right to remain silent, after taking Plaintiff into police custody." (ECF No. 19, PageID.81, ¶ 44.)  However, as Defendants correctly assert in their summary judgment motion (ECF No. 24, PageID.131-132), "a § 1983 action" for failure to read the *Miranda* warnings "is squarely foreclosed by the Supreme Court's decision . . . in *Chavez*."  *McKinley v. City of Mansfield*, 404 F.3d 418, 432 n.13 (6th Cir. 2005) (citing *Chavez v. Martinez*, 538 U.S. 760, 772 (2003) ("*Chavez's* failure to read *Miranda* warnings to Martinez did not violate Martinez's constitutional rights and cannot be grounds for a § 1983 action.")). "The remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-incriminating statements."  *Meyers v. City of Chardon*, No. 1:14 CV 2340, 2015 WL 1648992, at *11 (N.D. Ohio Apr. 13, 2015).  Further, the

arguments Plaintiff includes in his summary judgment response to support his due process claim – that Defendants furnished false information in support of the decision to arrest and prosecute, and failed to comply with their own department polices (ECF No. 25, PageID.206-207) – are unrelated and lack merit, as provided above.  Nor was it necessary for Defendants to obtain a properly Mirandized confession for them to proceed with an arrest and prosecution on these facts; the wife's statements and a plain view injury sufficed.  Thus, the Court should grant summary judgment on Count III for each of the individual Defendants.

### 3. Defendants the City of Redford and the Redford Township Police Department are also entitled to summary judgment

For each of the claims in his amended complaint, Plaintiff alleges that "Defendants Charter Township of Redford and Redford Township Police Department maintain unconstitutional policies, practices and customs that were the moving force behind the violations of Plaintiff's civil rights as pleaded in this complaint."  (ECF No. 19, PageID.78-79, 81, ¶¶ 27, 36, 45.)  Further, in his general allegations, Plaintiff asserts that these Defendants failed to adequately train or supervise the Defendant officers.  (ECF No. 19, PageID.77, ¶ 23.)

### a. City of Redford

Defendants correctly assert that the City of Redford is entitled to summary judgment because it has no municipal liability for Plaintiff's claims.  (ECF no. 24, PageID.132-135.)  Municipalities cannot be held liable for constitutional injuries

under a theory of *respondeat superior*.  Instead, a "municipality is a 'person' under

42 U.S.C. § 1983, and so can [only] be held liable for constitutional injuries for

which it is responsible."  *Morgan v. Fairfield Cty., Ohio*, 903 F.3d 553, 565 (6th

Cir. 2018).  This includes harm caused by its direct actions, by the implementation

of municipal policies, and "by employees for whom the municipality has failed to

provide adequate training[.]"  *Id*.  As Plaintiff has failed to demonstrate that he

suffered any constitutional harm, described in detail above, he cannot establish any

municipal liability in this case, and the Court should grant Defendant the City of

Redford summary judgment on each of his claims.  *See Blackmore v. Kalamazoo

Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable

under § 1983 absent an underlying constitutional violation by its officers.").[7]

### b.    Redford Township Police Department

Finally, the Court should conclude that the Redford Township Police

Department is entitled to summary judgment because, as Defendants assert (ECF

No. 24, PageID.121), a city police department is an agency of the city, and

therefore not a proper defendant in a § 1983 lawsuit.  *See Boykin v. Van Buren*

---

[7] It should also be noted that Plaintiff fails to identify any municipal policy or
custom which, because it was followed by the individual Defendants, lead to his
alleged harm.  Instead, he implies that had the officers followed an ill-defined
department policy, the alleged harms would not have occurred.  (ECF No. 25,
PageID.184, 196, 207.)  Further, Plaintiff does not challenge Defendants' argument
related to municipal liability in his summary judgment response.

*Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) (citing *Laise v. City of Utica*, 970 F.Supp. 605, 608 (E.D. Mich. 1997)).

### D.     Conclusion

The Court should **GRANT** Defendants' motion for summary judgment in its entirety.  (ECF No. 24.)  If it does, there will be no claims or parties remaining.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

24

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 26, 2020          s/*Anthony P. Patti*
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on February 26, 2020, electronically and/or by U.S. Mail.

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable Anthony P. Patti